## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LINDA MARIE NETHERTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. CIV-21-214-SM** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Linda Marie Netherton (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 15, 16.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings, arguing the Administrative Law Judge (ALJ) erred at steps two and four of his analysis. Doc. 20, at 5. After a

careful review of the record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[1]

## I.     Administrative determination.

### A.     Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.     Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

---

[1]     Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.

### C.    Relevant findings.

### 1.    The ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 12-22; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)    had not engaged in substantial gainful activity since August 27, 2018, the alleged onset date;

(2)    had the following severe medically determinable impairments: degenerative disc disease (compression fracture, status-post reduction internal fixation T12 fracture, posterior spinal fusion T11-T12 and T12-L1, and segmental posterior instrumentation T11 to L1, pedicle screws and vertical stabilization rods, mild endplate spurring); reconstructive surgery of a weight-bearing joint; and obesity;

(3)    had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)    had the residual functional capacity[2] (RFC) to perform light work, except she can occasionally stoop;

---

[2]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

(5)     was capable of performing her past relevant work as a cashier/checker, motel clerk, and convenience store clerk as those jobs are generally performed in the national economy; and so,

(6)     had not been under a disability from August 27, 2018, through September 30, 2020.

AR 12-22.

### 2.     Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.   Judicial review of the Commissioner's final decision.

### A.     Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). A decision is not based on substantial evidence "if it is overwhelmed by other

evidence in the record." *Wall*, 561 F.3d at 1052. The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013).

## B.   Issues for judicial review.

Plaintiff asserts the ALJ erred (1) at step two by not properly considering all of her impairments; and (2) at step four "by failing to account for all of" her physical and mental limitations. Doc. 20, at 5-12.

### 1.   Substantial evidence shows the ALJ considered all of Plaintiff's impairments.

Plaintiff contends "[t]he ALJ's determination at step two of the sequential evaluation process failed because he did not properly consider" the entire record and all of Plaintiff's impairments. *Id.* at 5. At step two, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. *See Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009). A physical or mental impairment must be established by medical evidence and must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. A plaintiff cannot establish a medically determinable physical or mental impairment without objective evidence, such as medical symptoms and laboratory findings. An impairment is considered

severe if it significantly limits the plaintiff's physical or mental ability to do basic work activities. "[S]tep two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring)). When an ALJ finds at least one impairment severe and proceeds to the remaining steps of the evaluation, any error at step two in failing to find a different impairment severe is considered harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

At step two, the ALJ determined that Plaintiff suffered from "severe": degenerative disc disease, reconstructive surgery of a weight-bearing joint, and obesity. AR 12-13. Following that determination, the ALJ proceeded through the remaining steps in the disability analysis. *See id.* 12-22. Thus, any error at step two is considered harmless.

To the extent Plaintiff argues the ALJ needed to consider these conditions "throughout the disability process," the ALJ did so. Doc. 20, at 7. After found those three impairments severe, the ALJ found her essential hypertension, abdominal aortic calcific atherosclerosis, chronic pain syndrome,

sleep disturbance, depression, and anxiety to be non-severe impairments. AR 13-14. Plaintiff argues the ALJ made no such determination about her cervicalgia and osteoarthritis of the cervical spine, despite her having been diagnosed with these conditions. Doc. 20, at 6-7.

Plaintiff fails to identify evidence in the record that these diagnosed impairments required limitations greater than what the ALJ included in her RFC. *See, e.g.*, *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) ("The mere diagnosis of a condition does not establish its severity or any resulting work limitations."); *Fulton v. Colvin*, 631 F. App'x 498, 501 (10th Cir. 2015) (concluding that "diagnoses by themselves are not significantly probative evidence the ALJ had to reject in order to find [the plaintiff] was not disabled, and therefore the ALJ did not need to discuss them"). Plaintiff points to x-ray evidence that supports her claims. Doc. 20, at 7 (citing AR 351). The ALJ considered this evidence, noting that the imaging was "again significant for post-surgical changes." AR 19. He also noted that on her follow-up exam a few months later, Plaintiff stated "she had pain in her lower back with standing and moving." *Id.* But the exam revealed "no vertebral tenderness in the neck," "non-focal neurologic findings, no muscular skeletal deformity, normal muscle strength and tone, as well as normal gait." *Id.* She had intermittent complaints of neck pain and continued to receive conservative treatment. *Id.* The ALJ also

discounted Plaintiff's consistency. *Id.* at 20. The undersigned concludes Plaintiff's argument that the ALJ had to discuss the impairments because Plaintiff received diagnoses for them lacks merit. *Paulsen*, 665 F. App'x at 666.

Plaintiff also argues "[t]he ALJ improperly disregarded [her] depression and anxiety at Step Two . . . ." Doc. 20, at 8. Plaintiff argues the ALJ "disregarded" these conditions because she "never saw a mental health specialist. *Id.* This is not the case. The ALJ did assess these conditions and considered the entire record in doing so. He noted the four broad functional areas of mental functioning and found that Plaintiff either had no limitations or no more than mild limitations in these areas. AR 13-15. He discussed the opinions of the state agency psychologists, who opined Plaintiff's mental impairments "are not severe." *Id.* The ALJ also considered Plaintiff's "presentation at examinations" (e.g., the "benign psychological findings on physical examinations") and her function report before concluding that her mental impairments caused no more than a minimal limitation of her ability to perform basic work activities. *Id.* at 14-15. Plaintiff's alleged step-two error fails.

> **2.    Substantial evidence supports the ALJ's step-four determination, and the ALJ did not err in reaching it.**

Plaintiff contends the ALJ violated "the procedures set forth by the *Winfrey* [*v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996)] test by failing to account for all of [Plaintiff's] physical and mental limitations while questioning the [vocational expert] and forming the RFC." Doc. 20, at 9. She maintains that the ALJ asked the vocational expert a hypothetical limited to sedentary work and "simple work-related decisions and judgments." *Id.* (citing AR 56-58). The vocational expert responded that given this hypothetical, all of Plaintiff's past work would be eliminated. *Id.* Plaintiff alleges that in forming the RFC the "ALJ completely bypassed the [vocational expert]." *Id.* So, her theory goes, the ALJ's determination she could perform light work lacked any input from the vocational expert, relied only on opinions from the state agency physicians, and did not account for all of her limitations. *See id.*

At step four of the sequential evaluation process, the ALJ must make specific findings in three phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ first assesses "the claimant's physical and mental [RFC]." *Id.* In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." *Id.* at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job

9

demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* at 1023. The ALJ should make these findings on the record. *Id.* at 1025.

The Court agrees with the Commissioner that "[vocational expert] testimony is not a requirement at step 4 . . . ." Doc. 24, at 15 (quoting 68 Fed. Reg. 51153, 51160 (Aug. 26, 2003)); *see Kepler v. Chater*, 68 F.3d 387, 392 (10th Cir. 1995). Here, the ALJ asked the vocational expert about Plaintiff's past work at Walmart (cashier), Motel 6 (motel clerk), and Murphy Oil (convenience store clerk), as well as how much stooping each position entailed. AR 54-56. The vocational expert testified that each position was a light exertional level as generally performed. *Id.* at 54-55. And of the three jobs only the cashier required any stooping, which the vocational expert testified was occasional. *Id.* at 55-56.

The ALJ must base his RFC assessment on all relevant evidence in the record, which can include medical history, medical sources, reports of daily activities, lay evidence, recorded observations, effects of symptoms, and testimony during the hearing. *See* Soc. Sec. R. 96-8p, 1996 WL 374184, at *4-5 (July 2, 1996).

That is what the ALJ did here. The ALJ considered and found persuasive the opinions of the state agency physicians, who found Plaintiff could perform

light work, except she can occasionally stoop. AR 20. He found the state agency psychologists' opinions that Plaintiff's mental impairments are not severe to be "well-supported by the evidence and persuasive." *Id.* He found the opinion of the consultative examiner "generally persuasive." *Id.* at 18.

Plaintiff argues the consultative examiner showed a limitation in her ability to stand or walk, as well as a "reduced range of motion in [her] left knee; her muscle spasms in her back, . . . difficulty sitting up, and worsening back pain, . . . weak heel-walking and toe-walking;" and "her largely diminished knee jerk reflexes and absent ankle reflexes." Doc. 20, at 11 (citing AR 333-41). The exam also showed Plaintiff's stability to be within normal limits, no pain on light palpitation to the neck or back, and five-out-of-five strength in her upper and lower extremities and five-out-of-five grip strength. AR 333-34. The lumbar spine exam noted postsurgical status after post-posterior fusion of T11 through L1 with pedicle screws and vertical stabilization rods and mild endplate spurring, all of which the ALJ noted as part of her degenerative disc disease. *Id.* at 335, 12. The ALJ's RFC assessment accounted for Plaintiff's limitations by restricting her to the "minimally strenuous activities" required by light work, with only occasional stooping. *Kirkpatrick v. Colvin,* 663 F. App'x 646, 649 (10th Cir. 2016).

His conclusion that Plaintiff is capable of light work with occasional stooping was therefore based on all the relevant medical evidence, which does not support further limitations. Because substantial evidence supports this conclusion, Plaintiff did not meet her burden to show that her impairments prevent her from performing past relevant work.

Plaintiff also argues "the ALJ made no provision for [her] hypertension, chronic pain syndrome, depression, and anxiety at Steps Four and Five." Doc. 20, at 6.[3] The ALJ found Plaintiff "has been able to manage her blood pressure levels effectively with diet modification and oral medications, without side effects or developing further cardiac complications." AR 13. Based on the conservative treatment and effective medication management, the ALJ concluded her blood pressure caused no more than minimal limitations for Plaintiff. *Id.* As to chronic pain syndrome, the ALJ concluded this might be "just [a] symptom[] related to [Plaintiff's] degenerative disc disease" and found Plaintiff received no specialized treatment for that condition. *Id.* Plaintiff's argument regarding her depression and anxiety likewise fails, as explained above. She points to no objective evidence supporting any functional limitations caused by these conditions.

---

[3]     The ALJ did not make a Step Five determination in this case. AR 22.

III.   **Conclusion.**

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 8th day of March, 2022.


SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE